RECEIVED
IN LAKE CHARLES, LA.

DEC 13 2013

TONY R. MOORE, CLERK
BY _____ PHP
            DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

RUBY MAE CONSTANCE, ET AL.  *   CIVIL ACTION NO. 2:12-CV-1252
                            *   (LEAD CASE) CONSOLIDATED WITH
         Plaintiffs         *   2:12-CV-1253 (MEMBER CASE)
                            *
V.                          *
                            *   JUDGE MINALDI
AUSTRAL OIL EXPLORATION     *
COMPANY, INC., ET AL.       *
                            *   MAGISTRATE JUDGE KAY
         Defendants         *
**************************************************************************

## MEMORANDUM RULING

Before the court are a series of Motions that shall be ruled on collectively due to the

interconnectivity of issues therein, as well as the adoption by several defendants of the

arguments made by similarly situated defendants.[1] The Motions before the court are as follows:

Wainoco Oil and Gas Company's (Wainoco) Motion to Stay Proceedings, Motion for a More

Definite Statement, Motion to Strike, Partial Motion to Dismiss for Failure to State a Claim, and

Motion for a Preliminary Hearing [Doc. 23];[2] Wainoco's Motion to Stay Proceedings, Motion

for a More Definite Statement, Motion to Strike, Partial Motion to Dismiss for Failure to State a

Claim, and Motion for Preliminary Hearing in Response to Plaintiffs' "First Supplemental

Petition," [Doc. 65] which incorporated Wainoco's previous Motion;[3] Wainoco's Motion to

Stay Proceedings, Motion for a More Definite Statement, Motion to Strike, Partial Motion to

---

[1] *See, e.g.*, Beem Oil and Gas Company's Mot. for More Definite Statement Pursuant to Rule 12(e) and Partial Mot. to Dismiss Pursuant to Rule 12(b)(6) [Doc. 88], at 5 [hereinafter Beem's Mot. [Doc. 88]]; Wainoco's Mot. to Stay Proceedings, Mot. for a More Definite Statement, Mot. to Strike, Partial Mot. to Dismiss for Failure to State a claim, and Mot. for Preliminary Hearing in Response to Pl.'s First Supplemental Am. Pet. [Doc. 65], at 2; Smith Production Company of Mississippi's Memo. in Supp. [Doc. 61-1], at 5; Memo. in Supp. of Duncan's Mot. for More Definite Statement and Mot. to Dismiss for Failure to State a Claim [Doc. 100-1], at 5.

[2] For ease of reference, all document numbers will refer to the lead case unless otherwise indicated.

[3] *See* Wainoco's Mot. to Stay Proceedings, Mot. for a More Definite Statement, Mot. to Strike, Partial Mot. to Dismiss for Failure to State a claim, and Mot. for Preliminary Hearing in Response to Pl.'s First Supplemental Am. Pet. [Doc. 65], at 1-2 [hereinafter Wainoco's Motion [Doc. 65]]. The plaintiffs have filed an Opposition [Doc. 105] to this Motion, and Wainoco has timely filed a Reply [Doc. 107].

Dismiss for Failure to State a Claim, Motion to Dismiss for Failure to Join a Party Under Rule 19, and Motion for Preliminary Hearing [Doc. 26 in case no. 2:12-cv-1253];[4] Beem Oil and Gas Company's (Beem) Motion for More Definite Statement Pursuant to Rule 12(e) and Partial Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 88];[5] Beem's Motion for a Preliminary Hearing [Doc. 78];[6] Smith Production Company of Mississippi's (Smith) Motion for Preliminary Hearing and Motion to Dismiss for Failure to State a Claim [Doc. 61 in case no. 2:12-cv-1253];[7] the Plaintiffs' Motion to Strike, and, Alternatively, Plaintiffs' Opposition to Defendants' Motion for Preliminary Hearing [Doc. 100];[8] Duncan Oil, Inc.'s (Duncan) Motion for More Definite Statement and Motion to Dismiss for Failure to State a Claim [Doc. 100 in case no. 2:12-cv-1253];[9] and BP America, Inc.'s (BP) Motion for A More Definite Statement Pursuant to FRCP 12(e) [Doc. 85], to which the plaintiffs have filed an Opposition [Doc. 90].

---

[4] It may be noted that no opposition was ever filed to this motion. *See* [Doc. 31] (wherein the plaintiffs explain that no such filing shall be made until the determination of the plaintiffs' then pending Motion to Remand, pursuant to a stay in the briefing deadlines then in effect). However, the substance of this motion is identical to [Doc. 23] in the lead case with the exception that [Doc. 26] in the member case contains a motion to dismiss for failure to join a party under Rule 19. The motion seeks the addition of Ruby Mae Simon Constance, Robert Joseph Constance, Debora Constance Dixon, Sheila Constance Miller, Chad Constance, John Theodore Constance, Rose Ann Constance Burch, and Mae Doris Constance Little. Wainoco's Mem. [Doc. 26-1], at 25. However, as these individuals are all parties plaintiff in the lead case, this alleged deficiency has been remedied. Further, for ease of reference throughout, any reference to Wainoco's Mot. [Doc. 65], is meant to encompass the substance of [Doc. 23] in the lead case and [Doc. 26 in case no 2:12-cv-1253], and a ruling on [Doc. 65] will moot[ Docs. 23 & 26 in case no. 2:12-cv-1253].

[5] Note that this motion is nearly identical to Beem's prior Motion for More Definite Statement Pursuant to Rule 12(e) and Partial Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 51]. The plaintiffs also filed an Opposition to this first motion [Doc. 55], and Beem timely filed a Reply [Doc. 60]. The plaintiffs have also filed an Opposition [Doc. 92] to this most recent of Beem's Motions, to which Beem has filed a Reply [Doc. 98]. However, as the later Motion [Doc. 88] was filed *after* the plaintiffs' filing of their First Supplemental and Amended Petition for Damages [Doc. 59], and Beem's Motion is predicated on alleged deficiencies in the petition, the court will rule on the latter Motion only, thereby rendering the first of Beem's Motions [Doc. 51] moot.

[6] Beem also later filed a Memo. in Supp. [Doc. 108] to their original Motion for Preliminary Hearing [Doc. 78].

[7] It may be observed that no Opposition was ever filed to this Motion. The plaintiffs filed Notice [Doc. 66 in case no. 2:12-cv-1253] into the record on August 8, 2012, that they would not be responding to this Motion, as there was at the time a stay in effect pending the determination of the plaintiffs' then-pending Motion to Remand. While the remand issue was settled, no Opposition has since been filed. Nevertheless, as Smith's Motion makes substantially the same claims and arguments as other similarly situated defendants, *see supra* note 1, and the plaintiffs have more than adequately briefed and argued in opposition of the motions of the other defendants, the court finds that this motion is ripe for review.

[8] Wainoco filed an Opposition [Doc. 106] to this Motion.

[9] The plaintiffs filed an Opposition [Doc. 102] to this Motion.

For the following reasons, Wainoco's Motion [Doc. 65] is **GRANTED IN PART, AND DENIED IN PART**. As a result, Wainoco's previous Motions [Doc. 23; Doc. 26 in case no. 2:12-cv-1253] are **DENIED AS MOOT**.

Beem's Motion [Doc. 88] is **GRANTED IN PART, AND DENIED IN PART**. As a result, Beem's previous Motion [Doc. 51] is **DENIED AS MOOT**.

The Motion for a Preliminary Hearing [Doc. 78] is **DENIED**. As a result, the plaintiffs' Motion to Strike [Doc. 100] is **DENIED AS MOOT**.

BP's Motion [Doc. 85] is **DENIED**.

Smith's Motion [Doc. 61 in case no. 2:12-cv-1253] is **GRANTED IN PART, AND DENIED IN PART**.

Duncan's Motion [Doc. 100 in case no. 2:12-cv-1253] is **GRANTED IN PART, AND DENIED IN PART**.

## FACTS AND PROCEDURAL HISTORY

The plaintiffs herein, thirteen individuals and a trust, originally filed suit in the 38th Judicial District Court in Cameron Parish, Louisiana, on April 11, 2012, alleging that oil and gas exploration and production activities undertaken by the defendant oil companies caused contamination and damage to land "own[ed] and/or use[d]" by the plaintiffs.[10] In their petition, the plaintiffs described the property at issue as follows:

1) Lots 4, 5, 28, and 29 of Block A Gulf Terrace on the beach, a subdivision of portion of Section 9, Township 15 South, Range 12 West; Fractional Section 9, Township 15 South, Range 12;
2) The West Half of the Southwest Quarter (W/2 of SW/4) of Section 1; the South Half (S/2) of Section 2; the East Half of the Southeast Quarter (E/2 of SE/4), the Southeast Quarter of the Northeast Quarter (SE/4 of NE/4) of Section 3, Fraction East Half of the Northeast Quarter (E/2 of NE/4) of Section 10; all of Fractional Section 11; Fractional West Half of the

---

[10] Pet. [Doc. 1-2], at ¶ 2.

Northwest Quarter (W/2 of NW/4) of Section 12, Township 15 South, Range 11 West;

3) The East Half of the Southwest Quarter of the Northeast Quarter (E/2 of the SW/4 of the NE/4) and the East Half of the Southeast Quarter (E/2 of the SE/4) of Section 7, Township 15 South, Range 14 West; and

4) The North Half (N/2) of Section 1, Township 15 South, Range 11 West.[11]

The petition also identified two dozen oil and gas wells allegedly operated on the subject property by serial numbers used by the Louisiana Department of Natural Resources.

The lead case was removed by Williams Exploration Company (Williams), ExxonMobil Oil Corporation (Exxon), and Diasu Oil & Gas Company, Inc. (Diasu), on May 16, 2012, on the basis of diversity jurisdiction. The member case, 2:12-cv-1253, was also filed in the 38th Judicial District Court, and originally included only six plaintiffs, all of whom were also originally listed as plaintiffs in the lead case. The property at issue in the member case petition was described as

1) The North Half (N/2) of Section 1, Township 15 South, Range 11 West;

2) The South Half (S/2) of Section 36, Township 14 South, Range 11 West;

3) The North Half of the South Half (N/2 of S/2) and the South Half of the North Half (S/2 of N/2) of Section 14, Township 15 South, Range 15 West;

4) The North Half of the South Half (N/2 of S/2) and the South Half of the North Half (S/2 of N/2) of Section 15, Township 15 South, Range 15 West;

5) Irregular Sections 15, 16, 17, 18, 19, Township 15 South, Range 12 West;

6) The West Half of the Southwest Quarter (W/2 of SW/4) of Section 1; the South Half (S/2) of Section 2; the East Half of the Southeast Quarter (E/2 of SE/4), the Southeast Quarter of the Northeast Quarter (SE/4 of NE/4) of Section 3, Fraction East Half of the Northeast Quarter (E/2 of NE/4) of Section 10; all of Fractional Section 11; Fractional West Half of the Northwest Quarter (W/2 of NW/4) of Section 12, Township 15 South, Range 11 West; and

7) Lots 4, 5, 28, and 29 of Block A Gulf Terrace on the beach, a subdivision of portion of Section 9, Township 15 South, Range 12 West; Fractional Section 9, Township 15 South, Range 12.[12]

---

[11] *Id.*

[12] Pet. [Doc. 1-2 in case no. 2:12-cv-1253], at ¶ 2.

The petition in the member case also identified thirty-one oil and gas wells by serial numbers that were allegedly operated by the defendants. The member case was removed on May 16, 2012.[13]

Shortly thereafter, Wainoco filed its Motion seeking dismissal for failure to state a claim, as well as requesting a more definite statement, in both the lead and member cases.[14] Smith and Duncan filed similar motions in the member case.[15] Beem also filed a similar motion in the lead case.[16]

Responding to these motions, the plaintiffs filed their First Supplemental and Amended Petition for Damages [Doc. 59] in the lead case. In it, the plaintiffs amended the lead case petition to include the property descriptions set forth in the petition in the member case. The plaintiffs also added additional well serial numbers.

Williams and Diasu filed a Motion to Consolidate [Doc. 109 in case no. 2:12-cv-1253] with the court. The lead and member cases were consolidated pursuant to Federal Rule of Civil Procedure 42(a)(2) by this court's Consolidation Order [Doc. 80], signed August 3, 2013.

Wainoco then filed another Motion [Doc. 65], similar to its previous Motion, seeking a stay, a more definite statement, a preliminary hearing, and dismissal for failure to state a claim, in light of the plaintiffs' now amended complaint. Beem then filed a Motion for a preliminary hearing pursuant to Louisiana Revised Statute § 30:29 [Doc. 78], as well as an additional Motion for a More Definite Statement and a Partial Motion

---

[13] Not. of Removal [Doc. 1 in case no 2:12-cv-1253].
[14] Wainoco's Mot. [Doc. 26 in case no. 2:12-cv-1253]; Wainoco's Mot. [Doc. 23].
[15] Smith's Mot. [Doc. 61 in case no. 2:12-cv-1253]; Duncan's Mot. [Doc. 100 in case no. 2:12-cv-1253].
[16] Beem's Mot. [Doc. 51].

to Dismiss [Doc. 88], also in light of the plaintiffs' amended complaint. BP likewise filed a Motion for a More Definite Statement [Doc. 85].

The plaintiffs then filed a Motion to Strike [Doc. 100], directed at Wainoco, but in reality seeking that any motions for a preliminary hearing pursuant to Louisiana Revised Statute 30:29(B)(6) be denied. The plaintiffs argue that the statute providing for a preliminary hearing is a procedural one, and, pursuant to the framework set forth by the Rules Enabling Act, 28 U.S.C. § 2072, and *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), such procedural rules are inapplicable in suit in federal court.

## LAW & ANALYSIS

### Motion to Dismiss for Failure to Join a Party Under Rule 19

As a preliminary matter, the defendants have moved to dismiss pursuant to Rule 19.[17] The defendants argue that Ruby Mae Simon Constance, Robert Joseph Constance, Debora Constance Dixon, Sheila Constance Miller, Chad Constance, John Theodore Constance, Rose Ann Constance Burch, and Mae Doris Constance Little should be joined because the aforementioned parties claim an interest in the land that forms the subject of the instant suit.

The request to dismiss pursuant to Rule 19 was made prior to the consolidation of cases 2:12-cv-1252 and 2:12-cv-1253. However, this request has been mooted by the fact that all the parties sought to be joined have been made parties to the lead case via the Consolidation Order [Doc. 80]. Accordingly,

**IT IS ORDERED** that the defendants' Motions [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] seeking dismissal pursuant to Rule 19 of the Federal Rules of Civil Procedure are **DENIED AS MOOT.**

---

[17] Wainoco's Mot. [Doc. 26 in case no. 2:12-cv-1253], at 6-7.

## Motions for More Definite Statements

Rule 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. PRO. 12(e). A Rule 12(e) motion is used to attack claims that fail to state a claim with sufficient particularity, even though such claims may be legally cognizable under the law.

A complaint must satisfy the standards set forth in Rule 8 of the Federal Rules, which requires only a "short and plain statement" showing that the "pleader is entitled to relief" and "a demand for the relief sought." FED. R. CIV. PRO. 8(a). The granting of Rule 12(e) motions is, generally speaking, to be disfavored, in "view of the liberality of the pleading standards set forth in [Rule 8]." *Martin v. Tesoro Corp.*, No. 11-cv-1413, 2012 U.S. Dist. LEXIS 71392, at *5 (W.D. La. May 21, 2012) (*citing Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)). A Rule 12(e) motion shall only be granted when "a pleading is so vague or ambiguous that a responsive pleading cannot be prepared." *Id.* (citations omitted). Moreover, "[w]hen a defendant needs additional information to prepare for trial, discovery is the proper procedure instead of a Rule 12(e) motion." *Coleman v. H.C. Price Co.*, No. 11-2937, U.S. Dist. LEXIS 46756, at *21 (E.D. La. Apr. 3, 2012) (*citing Fed. Deposit Ins. Corp. v. Fid. & Deposit Co. of Md.*, 118 F.R.D. 435, 437 (M.D. La. 1988)).

In *Martin*, the plaintiff alleged that the defendants therein "conducted, directed, controlled, or participated in oil and gas exploration and production activities" on the plaintiff's property. *Id.* at *6. The plaintiff further alleged that during those operations the property was contaminated by way of the seepage of toxic materials and oilfield

7

waste into the ground. *Id.* Further, the amended complaint set forth the legal theories under which the plaintiff sought recovery. *Id.* The court held that this alone was sufficient to defeat the defendant's motion for a more definite statement, as it was "sufficient to provide the defendants with adequate notice of the claims against them and their factual basis." *Id.*

The defendant Beem requests that the plaintiffs be required to submit a revised and restated complaint that identifies the specific plaintiffs and their specific claims against specific defendants, and that also includes the contractual relationships between parties, all wells at issue, and the basis for Beem's being sued.[18] Wainoco similarly argues that more information is needed with regard to the plaintiffs' actual interests in the subject property as well as the plaintiffs' relationships to the various defendants in order to properly prepare a responsive pleading.[19]

The court finds the defendants' arguments in this regard are without merit. The plaintiffs' petition lists the identities of all parties plaintiff to the case, as well as detailed descriptions of the property at issue. The petition also sets forth the legal theories under which recovery is sought, as well as the types of damages sought. The plaintiff has provided specific serial numbers of wells worked by specific defendants, even though this information arguably goes beyond what is necessarily required for compliance with Rule 8.[20] The court finds that the plaintiffs' initial petitions [Docs. 1-2 & 1-2 in case no. 2:12-cv-1253], in conjunction with the plaintiffs' First Supplemental

---

[18] Beem's Mot. [Doc. 88-1], at 15-16. Note also that, as the various defendants have all incorporated one another's defenses into their Motions, *see, e.g.,* Wainoco's Mot. [Doc. 23], at 6, the defendants will be collectively referred to as "defendants" where appropriate.
[19] Wainoco's Mot. [Doc. 23-1], at 9. *See generally* Duncan's Mot. [Doc. 100 in 2:12-cv-1253]; *see also* BP's Mot. [Doc. 85].
[20] *See* Well Information, Ex. A [Doc. 59-1]. *See, e.g.,* Pl.'s Opp. [Doc. 92], at 8 (setting forth the specific serial numbered wells which Beem allegedly "drilled, reworked, and/or operated," and further stating that the "plaintiffs do not allege that Beem operated any other wells other than the above wells on the property in Holly Beach." *Id.*).

and Amended Petition [Doc. 59], are sufficient to satisfy the "short and plain statement" requirement of Rule 8. The additional information sought by the defendants is more appropriately addressed in discovery. *See Coleman*, 2012 U.S. Dist. LEXIS 46756, at *21-23. Accordingly,

**IT IS ORDERED** that the defendants' Motions [Docs. 65, 85, 88, and 100 in case no. 2:12-cv-1253] be and hereby are **DENIED** insofar as they seek a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

### Motions for Failure to State a Claim

Rule 12(b)(6) motions for failure to state a claim may be granted when the plaintiff fails to state a legally cognizable claim. *See* FED. R. CIV. PRO. 12(b)(6). A 12(b)(6) motion shall be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. United States*, 281 F.3d 158, 161-62 (5th Cir. 2001) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Alyce Gaines Johnson Special Trust v. El Paso E & P Co., L.P.*, 773 F. Supp. 2d 640, 643 (W.D. La. 2011) (*citing Iqbal*, 129 S. Ct. at 1949).

Beem seeks the dismissal of the plaintiffs' claims for fraud, continuing tort, continuing trespass, civil fruits, strict liability for ultra-hazardous activity, unjust

9

enrichment, and obligations owed by a servitude owner.[21] Wainoco, adding to this list, seeks dismissal of the plaintiffs' claims for punitive damages, restoration of the plaintiffs' property to its "original condition, recovery under Louisiana Civil Code Article 2688, as well as many of those claims sought to be dismissed by Beem.[22] Wainoco further alleges that the plaintiffs' claim are premature, that they have prescribed, and that the plaintiffs have failed to state a claim under § 324A of the Restatement 2d.[23] As previously stated, many of the defendants have adopted the arguments and briefings of their fellow similarly situated defendants; accordingly, for simplicity's sake, the defendants will frequently be referred to collectively throughout.

### 1. Claims for Recovery of Civil Fruits, Liability for Ultra-Hazardous Activity, and Recovery of Obligations of Mineral Servitude Owners

As a preliminary matter, in the plaintiffs' Oppositions [Docs. 92, 102, 105], they state that they offer no argument as to the claims for civil fruits or recovery based on the defendants' ultra-hazardous activity, and they also concede that neither Beem, Wainoco, nor Duncan is a mineral servitude owner of the property at issue.[24] Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] be and hereby are **GRANTED** as to the plaintiffs' claims for recovery of civil fruits, recovery based on the defendants' ultra-hazardous activity, and for obligations owed by a servitude owner.

---

[21] Beem's Mot. [Doc. 88], at 3-5.
[22] Wainoco's Mot. [Doc. 23], at 3-5.
[23] *Id.* at 5-6. Smith's Mot. [Doc. 61 in case no. 2:12-cv-1253] mirrors the motions filed by Beem and Wainoco in this regard.
[24] Pl.'s Opp [Doc. 92], at 13; Pl.'s Opp. [Doc. 102], at 14; Pl.'s Opp. [Doc. 105], at 33;

### 2. Claims for Fraud

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. PRO. 9(b). The Fifth Circuit has expounded on the particularity requirement of Rule 9, stating that a party must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (citations omitted). Further, under Louisiana law, fraud "is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE. ANN. art. 1953 (1984).

The defendants argue that the plaintiffs have failed to plead their allegation of fraud with the required specificity. The plaintiffs, however, seek to invoke a somewhat relaxed standard for the pleading of fraud, citing *United States v. Bristol-Myers Squibb Company*, 587 F. Supp. 2d 805 (E.D. Tex. 2008), for the proposition that such a relaxed standard is appropriate when the facts supporting an allegation of fraud are peculiarly within the perpetrator's knowledge.[25] However, the court in *Bristol-Myers* specifically stated that the "Fifth Circuit has developed an exception in FCA cases that permits the particularity requirements of Rule 9(b) to be relaxed in certain circumstances." *Id.* at 820 (citations omitted). This should not be read to be a broad-based exception in all Rule 9 pleading situations, nor are such relaxed standards appropriate here.

The particularity requirement of Rule 9 provides a defendant with notice of the claim against him, and also "protects defendants from harm to their reputation and goodwill." *Id.* at 819. Further, "it prevents plaintiff's [sic] from filing a claim and then attempting to uncover

---

[25] *See, e.g.*, Pl.'s Opp. [Doc. 92], at 9-10.

11

unknown wrongs through discovery." *Id.* (*citing Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Harrison v. Westinghouse*, 176 F.3d 776, 784 (4th Cir. 1999); *United States of America ex rel. King v. Alcon Laboratories, Inc.*, 232 F.R.D. 568, 570 n.2 (N.D. Tex. 2005) (*citing United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 614 (S.D. Tex. 2001))).

An example of a pleading that satisfies the requirements of Rule 9 may be found in *Bamburg v. Axis Onshore L.P.*, No. 08-1466, 2009 U.S. Dist. LEXIS 129709 (W.D. La. Apr. 28, 2009), wherein the plaintiffs alleged that the defendants "made certain false statements in September or early October 2007, via interstate telephone calls and mailings that defendants knew to be false, and that plaintiffs relied upon to their detriment." *Id.* at *36. This can be contrasted to the facts in *Martin*, a case somewhat factually analogous to the instant case. In *Martin*, the plaintiff alleged that the defendants' "fraud and misrepresentation consisted of actively burying or concealing pollution, failing to inform Mr. Martin of the presence of the contamination and its hazardous nature, and failing to inform Mr. Martin that the defendants' practices violated state regulations." *Martin*, 2012 U.S. Dist. LEXIS 71392, at *10. These allegations are remarkably similar to those found in the plaintiffs' petition.[26] The court, in finding that Mr. Martin had not sufficiently complied with the requirements of Rule 9, stated that "Rule 9(b) requires plaintiffs to distinguish among each defendant they sue and set forth each defendant's responsibility for the allegedly fraudulent activities." *Id.* at *12 (citations omitted). Here, the plaintiffs have failed to do so. They have also failed to "specify the statements contended to be fraudulent, identify the speaker[s], state when and where the statements were made, and explain why the statements were fraudulent." *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (citations omitted). Under such circumstances,

---

[26] *See* Pet. [Doc. 1-2], at ¶¶ 13-14.

the court finds that the defendants' arguments as to the plaintiffs' allegations of fraud have merit. Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to the plaintiffs' claims for fraud be and hereby are **GRANTED**. Dismissal of the fraud claim, however, shall be without prejudice to the right of the plaintiffs. Should the plaintiffs be able to present a sufficient factual basis for fraud in a timely fashion, they are free to do so. *See, e.g., Adner v. Int'l Paper Co.*, No. 13-cv-0368, 2013 U.S. Dist. LEXIS 143476, at *11-12 (W.D. La. Aug. 30, 2013).

### 3. Claims for Continuing Tort

The Louisiana Supreme Court has recently had multiple opportunities to detail the parameters of the continuing tort doctrine. *See, e.g., Marin v. Exxon Mobil Corp.*, 48 So. 3d 234 (La. 2010); *Hogg v. Chevron U.S.A., Inc.*, 45 So. 3d 991 (La. 2010); *Crump v. Sabine River Auth.*, 737 So. 2d 720 (La. 1999). The test set forth by the Louisiana Supreme Court states that "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." *Marin*, 48 So. 3d at 253 (*citing Hogg*, 45 So. 3d at 1004).

In *Marin*, the plaintiff argued that the damage sustained therein constituted a continuing tort because evidence showed that contaminants from the defendant's activities continuously and progressively "(1) migrate[d], (2) "cause[d] successive damage, and (3) cause[d] ongoing and cumulatively increasing deterioration" of the plaintiff's property. *Id.* at 254. The Louisiana Supreme Court disagreed, stating that the cause of the plaintiffs' injury "was still the actual disposal or storage of the oilfield waste in unlined pits on plaintiffs' property." *Id.* (*citing*

*Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C.*, 981 So. 2d 23 (La. Ct. App. 2007), *writ denied*, 978 So. 2d 327 (La. 2008); *Mouton v. State of Louisiana*, 525 So. 2d 1136 (La. Ct. App. 1988), *writ denied*, 526 So. 2d 1112 (La. 1988)).  The court went on to state that "[s]imply because the contaminants may have continued to dissolve into, or move with, the groundwater with the passage of time does not turn this into a continuing tort." *Id.*

The defendants herein argue that the plaintiffs have failed to properly plead a claim for which relief can be granted based upon a theory of a continuing tort.  This is predicated, the defendants assert, on the fact that the plaintiffs' allegations do not dispute the fact that the defendants' activities on the property have ceased.  The plaintiffs counter by asserting that the defendants' "damage causing acts are continuing on a daily basis" because they allegedly failed to close the pits at all sites and because they are in violation of the Coastal Zone Management requirements.[27]  However, the plaintiffs cite no case law to support their argument.  As the *Crump* court noted, "the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." *Crump*, 737 So. 2d at 729 (citations omitted).  As such, it seems to the court that the situation presented by the plaintiff closely mirrors those factual scenarios presented to the Louisiana Supreme Court in *Marin* and *Hogg*.  The conduct complained of has ceased, and, as a result, the application of the continuing tort doctrine to the case at bar is inappropriate.  Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to the plaintiffs' claims under the continuing tort doctrine be and hereby are **GRANTED**.

---

[27] Pl.'s Opp. [Doc. 92], at 12.

### 4. Claims for Continuing Trespass

A claim for continuing trespass demands essentially the same inquiry as a claim for a continuing tort. "A continuing trespass is based on recurring tortious conduct, and not on the continuation of harm caused by previous but terminated tortious conduct." *Hogg*, 45 So. 3d at 1006, n.17. In *Hogg*, the Louisiana Supreme Court rejected the plaintiff's argument that a continuing trespass should be found where the there was no allegation of new conduct which caused property contamination, but merely an allegation that the contamination was the ill effect of past conduct on the part of the defendant. *Id.* The takeaway is that where "the operating cause of the injury—the damage-causing conduct—is not continuing, there is no continuing tort." *Id.* at 1006.

Applying these principles to the instant case, and for the reasons stated in the previous section discussing the application of the continuing tort doctrine to the instant case, the court finds that the plaintiffs have not plead an allegation of a continuing trespass. There is simply nothing in the pleadings to indicate ongoing wrongful conduct on the part of the defendants. Rather, the plaintiffs allege only the presence of ill effects as a result of prior acts of the defendants. Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to the plaintiffs' claims for continuing trespass be and hereby are **GRANTED**.

### 5. Unjust Enrichment

The defendants next move to dismiss the plaintiffs' claims for recovery under a theory of unjust enrichment.[28]  Recovery under a theory of unjust enrichment is predicated on the notion that one "who has been enriched without cause at the expense of another person is bound to compensate that person." LA. CIV. CODE. ANN. art. 2298 (1995).  This remedy is only available where no other remedy is available at law. *Id.* The Louisiana Supreme Court has said that, in order to plead a claim for unjust enrichment, a plaintiff must show "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of cause or justification for the enrichment and impoverishment; and (5) no other remedy at law." *United States Disaster Recovery, Inc. v. St. Tammany Parish Gov't*, No. 13-c-0656, 2013 La. LEXIS 1235, at *1, n.2 (La. May 31, 2013) (*citing Edwards v. Conforto*, 636 So. 2d 901 (La. 1993); *Minyard v. Curtis Products, Inc.*, 205 So. 2d 422 (La. 1967)).

The defendants argue that, even if the plaintiffs can satisfy the first four elements required to plead a claim for unjust enrichment, they fall short of satisfying the fifth element which requires a showing that no other remedy is available at law.[29]  For instance, as already discussed at great length, the plaintiffs have asserted a great many claims, including breach of contract, against the defendants.  The plaintiffs, on the other hand, "assert that if all other causes of action were to fail then Plaintiffs are entitled to assert their claim for unjust enrichment."[30] With this, the court cannot agree.

Unjust enrichment is a specific cause of action that may not be asserted against a defendant as a mere catchall or safety net in the event that a plaintiff fails to succeed on the merits of his or her other claims.

---

[28] *See, e.g.*, Beem's Mot. [Doc. 88-1], at 24.
[29] Wainoco's Mot. [Doc. 23-1], at 20.
[30] Pl.'s Opp. [Doc. 105], at 33.

> Pursuant to La. Civ. Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." *See Carriere v. Bank of Louisiana*, 702 So. 2d 648, 671 (La. 1996) (on rehearing). The unjust enrichment remedy is "only applicable to fill a gap in the law where no express remedy is provided." *Mouton v. State*, 525 So. 2d 1136, 1142 (La. Ct. App. 1988), *writ denied* 526 So. 2d 1112 (La. 1988).

*Pinegrove Elec. Supply Co. v. Cat Key Const., Inc.*, 88 So. 3d 1097, 1101 (La. Ct. App. 2012) (*quoting Walters v. MedSouth Record Mgmt., L.L.C.*, 38 So. 3d 243, 244 (La. 2010)).  For instance, in *Walters*, the Louisiana Supreme Court found that, as the plaintiff therein had pled a delictual action, he was precluded from seeking recovery under a theory of unjust enrichment. *Walters*, 38 So. 3d at 244 (citation omitted).

The plaintiffs herein have filed suit under theories of breach of contract, tort, and others. As such, their claim for recovery under a theory of unjust enrichment cannot stand under Louisiana law.  Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to the plaintiffs' claims for unjust enrichment be and hereby are **GRANTED**.

### 6.  Punitive Damages

The defendants next seek dismissal of the plaintiffs' claims for punitive damages.  The plaintiffs allege that, "with regard to plaintiffs' tort claims that arise under the provisions of former Civil Code article 2315.3, plaintiffs' claims for punitive damages are limited to acts or omissions of the defendants (or their predecessors or successors) that occurred during the period of applicability of article 2315.3."[31]

---

[31] Pet. [Doc. 1-2], at ¶ 29.

Former Civil Code article 2315.3 went into effect on September 4, 1984, and was subsequently repealed on April 16, 1996. LA. CIV. CODE. ANN. art. 2315.3 (added by 1984 Acts No. 335, Section 1, effective September 4, 1984; repealed by Acts 1996, 1st Ex. Sess. No. 2, Section 1, effective April 16, 1996). The statute provided, in pertinent part, that "[i]n addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." *Id.* "[I]mplicit in storage, handling, or transporting is the requirement that the hazardous substance be in the *possession or control* of a person who then handles or otherwise deals with that substance." *Ross v. Conoco,* 828 So. 2d 546, 556 (La. 2002) (*citing In re New Orleans Train Car Leakage Fire Litig.,* 671 So. 2d 540, 546 (La. Ct. App. 1996)) (emphasis in original).

Statutory provisions authorizing the availability of punitive damages are subject to strict construction. *Bujol v. Entergy Servs.,* 922 So. 2d 1113, 1137 (La. 2004) (*citing Ross v. Conoco,* 828 So. 2d 546, 556 (La. 2002) (citation omitted)). Further, the Louisiana Supreme Court "has held that damages under former La. C.C. art. 2315.3 are recoverable on a derivative basis where a plaintiff is entitled to recover tort damages." *Id.* (*citing Corbello v. Iowa Production,* 850 So. 2d 686, 707 (La. 2003); *Adams v. J.E. Merit Const., Inc.,* 712 So. 2d 88, 90 (La. 1998)).

The defendant Wainoco makes several arguments in support of its Motion to Dismiss the plaintiffs' claims for punitive damages, all of which have been adopted by the other defendants pursuant to their declarations in brief stating as much. Wainoco argues that, as the plaintiffs have no claims in tort, they can have no claim for punitive damages, per the principle set forth

above.[32]  Wainoco next argues that, even if the plaintiffs have a claim in tort, they have not

pleaded sufficient factual allegations to sustain a claim for punitive damages.

As to Wainoco's first argument, the plaintiffs still have at least one claim sounding in tort

that has not been dismissed.  For instance, while the instant opinion disposes of the plaintiffs'

claim for continuing tort and continuing trespass, the plaintiffs have pled an action in negligence

pursuant to article 2315 of the Louisiana Civil Code.[33]

As to Wainoco's argument that the plaintiffs have not sufficiently plead their allegations:

the plaintiffs' petition stated that the "defendants had actual possession or control of the toxic

and hazardous substances" and that their actions constitute "wanton or reckless disregard for

public safety."[34]  As stated above, all that is required is a "short and plain statement" showing

that the "pleader is entitled to relief" and "a demand for the relief sought."  FED. R. CIV. PRO.

8(a).  The plaintiffs have met this burden.

The defendants further argue that the well operator list submitted by the plaintiffs shows

that Wainoco performed no operations on the plaintiffs' property after August 1, 1984, prior to

the enactment of the punitive damages statute relied on by the plaintiffs.[35]  However, the

plaintiffs submit that Wainoco's operations continued on the plaintiffs' property until July 28,

1988.[36]  Wainoco counters by asserting that according to the plaintiffs' submissions,[37] operations

after August 1, 1984, were conducted by Diasu, not Wainoco.  Given the present factual dispute

between parties as to during what precise time period Wainoco was actually conducting

---

[32] Wainoco's Mot. [Doc. 23-1], at 13.
[33] Pet. [Doc. 1-2], at ¶15.
[34] Pet. [Doc. 1-2], at ¶ 29.
[35] *See* Wainoco's Mot. [Doc. 23-1], at 14.
[36] Pl.'s Opp. [Doc. 105].
[37] *See* Pl.'s Opp., Exhibit 2 [Doc. 105-2].

operations on the property, the court is disinclined to grant the defendants' Motion to Dismiss for Failure to State a Claim as to punitive damages at this time. Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to the plaintiffs' claims for punitive damages be and hereby are **DENIED** at this time.

### 7.  Restoration of the Property to Its Original Condition

The defendants cite to numerous instances in the plaintiffs' petition that seek restoration of the subject property to its "original condition."[38] The defendants argue that no standard presented by the plaintiffs would indicate a legal requirement necessitating a return of the property to its original condition.[39] However, the defendants also acknowledge that, pursuant to *Marin*, "[w]here restoration is owed under a mineral lease, the standard is return of the property subject to wear and tear, unless the lease contains an express contractual requirement to achieve another standard."[40] The plaintiffs counter by reliance upon, and reference to, alleged lease agreements between the defendants and the plaintiffs, as well as the recent opinion of the Louisiana Supreme Court in *State v. Louisiana Land & Exploration Company*, 110 So. 3d 1038 (La. 2013). In *Louisiana Land & Exploration Company*, the Louisiana Supreme Court stated that, according to *Castex* and *Marin*,

> [u]nless the lessee admits liability, the lessor, to be entitled to remediation of oilfield contamination under Louisiana law, must establish that the environmental damage exceeded the normal wear and tear envisioned by the lease and was caused by the lessee's excessive and unreasonable exercise of its rights under the lease, to which the lessor had not consented.

*La. Land & Exploration Co.*, 110 So. 3d at 1062.

---

[38] Wainoco's Mot. [Doc. 23-1], at 15 (*citing* Pet. [1-2], at ¶¶ 22, 26, 28, 37).
[39] *Id.*
[40] *Id.* (*citing Marin*, 48 So. 3d at 259-60 (additional citations omitted)).

"To properly plead a cause of action based on breach of contract, a [p]laintiff must allege an identifiable contractual promise that [the defendant] failed to honor." *Wright v. Citimortgage, Inc.*, No. 09-482, 2010 U.S. Dist. LEXIS 17979, at *9 (W.D. La. Mar. 1, 2010) (*citing Morris v. Countrywide Home Loans*, No. 06-5472, 2008 U.S. Dist. LEXIS 16793, at *4 (E.D. La. Mar. 5, 2008) (*citing Miller v. Loyola Univ. of New Orleans*, 829 So. 2d 1057, 1062 (La. Ct. App. 2002) (additional citations omitted))). In *Wright*, the court granted a 12(b)(6) motion on the plaintiffs' breach of contract claims because the plaintiff failed to identify any contractual provision or promise that the defendant had breached. *Id.* at *9.

The instant case presents a situation where the plaintiffs have identified a specific contractual provision—namely, "documents expressly provid[ing] for restoration of any property damages to original condition."[41] However, the plaintiffs have not produced or submitted the contracts themselves. Further, the plaintiffs state that it is the defendants who "have failed to reveal to the Court [the] express provisions in the mineral and surface leases."[42]

In *Birdwell v. XTO Energy, Inc.*, No. 09-1564, 2010 U.S. Dist. LEXIS 31110 (W.D. La. Mar. 9, 2010), the defendants filed a motion to dismiss the plaintiffs' breach of contract claim on the grounds that no contract had been submitted to the court. *Id.* at *5. In denying the motion, the court noted that it was unclear at the time of the ruling whether a contract existed between the parties, and leave was granted to re-urge the motion following adequate discovery. *Id.* Under the circumstances, the court found that the plaintiffs had adequately stated a claim against the defendants.

Similarly, here, it seems likely that there exist contractual relationships between the plaintiffs and the defendants. However, for whatever reason, the contracts upon which the

---

[41] Pl.'s Opp. [Doc. 105], at 17.
[42] *Id.*

21

plaintiffs rely have not yet been submitted to the court.  As a result, it would be inappropriate to dismiss the plaintiffs' contractual remedies at this time, including the plaintiffs' claims for restoration of the property in question to its original condition.  Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss for Failure to State a Claim [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to the plaintiffs' claims for restoration of the property to its original condition be and hereby are **DENIED** at this time.

### 8.   Claims Under Louisiana Civil Code Article 2688

Louisiana Civil Code article 2688 states that "[t]he lessee is bound to notify the lessor without delay when the thing has been damaged or requires repair, or when his possession has been disturbed by a third person.  The lessor is entitled to damages sustained as a result of the lessee's failure to perform this obligation."  LA. CIV. CODE. ANN. art. 2688 (2004).  Wainoco argues that, as this is a substantive law, it does not operate retroactively.[43]  It goes on to argue that, as the law went into effect in 2005, and there is no allegation in the petition that Wainoco operated or had any interest in the property during the law's effective period, this claim should be dismissed.  The plaintiffs concede that Wainoco has a valid argument in this regard, and the court concurs.  However, the plaintiffs retain the right to seek relief under Article 2688 against all other defendants who operated on the plaintiffs' land under lease agreements within the applicable time period.  Accordingly,

**IT IS ORDERED** that Wainoco's Motion to Dismiss for Failure to State a Claim [Doc. 65] as to the plaintiffs' claims for recovery under Louisiana Civil Code Article 2688 be and hereby is **GRANTED**.  However, as to the plaintiffs' claims under Louisiana Civil Code Article

---

[43] Wainoco's Mot. [Doc. 23-1], at 21 (*citing* LA. CIV. CODE. ANN. art. 6 (1987)).

2688 against all other defendants, the Motions [Docs. 88, 61 in case no. 2:12-cv-1253, and 100

in case no. 2:12-cv-1253] are **DENIED** until such time as those defendants have made a showing

that Article 2688 likewise is inapplicable to their respective lease agreements.

### 9.  Prematurity

The defendants next argue that "*if* Plaintiff's breach of contract claims involve contracts

or leases which require pre-suit notice, Plaintiffs' claims are premature because they failed to

make amicable demand."[44]  The *Broussard* case cited by both the plaintiffs and the defendants is

instructive on the history of the requirement of making an amicable demand of a party in a

breach of contract action prior to the filing of suit, as well as the distinction between active and

passive breaches prior to the changing of the law in 1984.  *See Broussard v. Hilcorp Energy Co.*,

24 So. 3d 813, 818 (La. 2009).  However, without going into detail as to the legal requirement of

making amicable demand in various breach of contract scenarios, as the defendants' Motion in

this regard is predicated on a hypothetical, dismissal of any of the plaintiffs' claims at this time

for prematurity would itself be premature.  Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss [Docs. 65, 88, 61 in case no.

2:12-cv-1253, and 100 in case no. 2:12-cv-1253] any of the plaintiffs' breach of contract claims

on the basis of prematurity be and hereby are **DENIED**.

### 10. Prescription

The defendants next argue that the plaintiffs' claims have prescribed.  Personal actions,

such as actions for breach of contract, have a prescriptive period of ten years.  LA. CIV. CODE.

ANN. art. 3499 (1983).  Actions sounding in tort are subject to a liberative prescriptive period of

---

[44] *Id.* at 22 (*citing Broussard v. Hilcorp Energy Co.*, 24 So. 3d 813, 818 (La. 2009)) (emphasis added).

one year, the period commencing to run from the day the damage is sustained. LA. CIV. CODE ANN. art. 3492 (1992). However, these prescriptive periods are subject to several exceptions.

The doctrine of *contra non valentem* suspends prescription when the facts of a case fall within one of four recognized categories. *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012) (citation omitted). The four instances include:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant."

*Id.* Further, while the party seeking a dismissal based on prescription generally bears the burden of proving prescription at trial, that burden shifts to the plaintiff to show that the action has not prescribed if prescription is "evident on the face of the pleadings." *Id.* at 1149 (*citing Campo v. Correa*, 828 So. 2d 502, 508 (La. 2002) (additional citation omitted)). Where there is an absence of evidence, "the objection of prescription must be decided upon the facts alleged in the petition, and all allegations contained therein accepted as true." *Id.* at 1150. In *Wells*, the Louisiana Supreme Court stated that the plaintiffs' claims appeared prescribed on their face where the defendant's operations on the plaintiff's property had ceased in 1994, and suit was not filed until 2009. *Wells*, 89 So. 3d at 1150. Thus, the burden shifted to Wells to prove that prescription had been suspended. *Id.*

In the instant case, as in *Wells*, the action has prescribed on its face, at least as to Wainoco, as Wainoco plugged and abandoned its last wells on the plaintiffs' property in 1988. Without conducting an exhaustive analysis of the Well Information [Doc. 105-2] documents

24

submitted by the plaintiffs, the court can assume, without needing to definitively conclude, that the claims against several other similarly situated defendants likely have also prescribed on their face. Regardless, the plaintiffs herein, seeking to invoke what is commonly referred to as the "discovery rule," *Dominion Exploration & Prod. v. Waters*, 972 So. 2d 350, 358 (La. Ct. App. 2007), have alleged in their petition that they "did not have actual or constructive knowledge of the pollution described in [the] petition until less than a year prior to the filing of this suit."[45] As there is arguably an absence of evidence as to the issue of prescription insofar as what the plaintiffs knew and when they knew it, this matter must be decided upon the facts alleged in the petition, taken as true. As such, a dismissal of the plaintiffs' claims based on the expiration of prescriptive periods would be inappropriate at this stage in the proceedings. *See Jones v. Herlin*, No. 12-1978, 2013 U.S. Dist. LEXIS 133037, at *26 (W.D. La. Sept 17, 2013) (where the defendant's motion to dismiss based on prescription was denied because the plaintiffs alleged in their complaint that they were unaware of the facts giving rise to their cause of action until within one year of when suit was filed). Nevertheless, the defendants have leave to re-urge the prescription argument after sufficient discovery, or when sufficient facts come to light to support such a motion. Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] as to any of the plaintiffs' claims on the basis of prescription be and hereby are **DENIED** at this time.

### 11. Claims Under Section 324A of Restatement 2d of Torts

The plaintiffs, in their petition, state that "[i]n addition to their express or implied assumption of contractual obligations owed to [the] plaintiffs, [the] defendants are liable to

---

[45] Pet. [Doc. 1-2], at ¶14.

plaintiffs under the provisions of Section 324A of the Restatement 2d, as interpreted by Louisiana jurisprudence."[46] The plaintiffs argue that Section 324A militates a finding that "one or more of the defendants assumed duties owed by others to the plaintiffs to protect plaintiff and their property from contamination and harm."[47]

Section 324A provides that

[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A. "[T]his common law doctrine has existed for centuries and has traditionally been used to impose liability upon an actor who has failed to exercise reasonable care when it undertook to perform a duty owed to a third party." *Bujol*, 922 So. 2d at 1128 (citation omitted).

The defendants argue that, pursuant to the court's holding in *Fountain Lakes Associates, L.P. v. Red River Roofing & Restoration, Inc.*, No. 02-2193, 2007 U.S. Dist. LEXIS 69042 (W.D. La. Sept. 17, 2007), liability does not lie herein under Section 324A because that section speaks only to harm visited upon an individual, not harm occasioned upon property.[48] The plaintiffs counter that a ruling on this issue would be groundless if undertaken prior to discovery.[49] However, notably, the plaintiffs cite to no legal authority to counter the defendants' assertion that Section 324A has no application to suits for damages to property.

---

[46] Pet. [Doc. 1-2], at ¶ 16.
[47] *Id.*
[48] Wainoco's Mot. [Doc. 23-1], at 23 (*citing Foutain Lakes*, 2007 U.S. Dist. LEXIS 69042 at *26).
[49] Opp. [Doc. 105].

Nevertheless, the court does not interpret the *Fountain Lakes* opinion quite so narrowly as do the defendants. The *Fountain Lakes* court, in distinguishing the facts therein from those in *Bujol*, merely stated that the *Fountain Lakes* case concerned "a case where the 'physical harm' pertain[ed] to a building, not an individual." *Id.* at *27. Moreover, Louisiana case law leaves some question as to whether the defendants' interpretation of Section 324A is correct under Louisiana law. For instance, in *Young v. Cent. Progressive Bank*, No. 2010-ca-1816, 2011 La. App. Unpub. LEXIS 145 (La. Ct. App. Mar. 25, 2011), the Louisiana First Circuit Court of Appeals considered a case involving flood damage to property and the applicability of the principles of Section 324A to such a case. *Id.* at *8-9.[50] There, although the court ultimately found that no duty was imposed upon the defendants under the facts presented, there was no discussion or indication that such a duty was precluded simply because the plaintiffs were seeking damages resulting from damage to property rather than damages resulting from physical harm to the individual. Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss [Docs. 65, 88, 61 in case no. 2:12-cv-1253, and 100 in case no. 2:12-cv-1253] be and hereby are **DENIED** at this time as to the plaintiffs' claims under Section 324A of the Restatement (Second) of Torts.

### Motions for a Preliminary Hearing

The defendants request a preliminary hearing "to determine whether there is good cause for maintaining" suit against the respective defendants.[51] The plaintiffs, in turn, have filed a

---

[50] It should be noted that, while the *Young* opinion does not cite directly to Section 324A, it does cite to *Bujol v. Entergy Services, Inc.*, 922 So. 2d 1113, 1129 (La. 2004), directly to the section of the *Bujol* opinion construing Section 324A.

[51] Wainoco's Mot. [Doc. 23-1], at 2. *See also* Beem Oil and Gas Company's Mot. for Preliminary Hearing [Doc. 78]; Beem Oil and Gas Company's Memo. in Supp. of Its Mot. for Preliminary Hearing [Doc. 108]; Smith's Memo. in Supp. [Doc. 61-1], at 1-2;

Motion to Strike [Doc. 100] any motions requesting a preliminary hearing, to which Wainoco has filed an Opposition [Doc. 106].

The defendants' request for a preliminary hearing is predicated on Louisiana Revised Statute § 30:29(B)(6) (the Act). The Act is entitled "Remediation of oilfield sites and exploration and production sites," and states that, "[w]ithin sixty days of being served with a petition or amended petition asserting an action, a defendant may request that the court conduct a preliminary hearing to determine whether there is good cause for maintaining the defendant as a party in the litigation." LA. REV. STAT. ANN. § 30:29(B)(6) (2012).

The plaintiffs first note that, under principles set forth in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), and the Rules Enabling Act, 28 U.S.C. § 2072, a court sitting in diversity is to apply the Federal Rules of Civil Procedure in procedural matters, and state law is to govern substantive matters.[52] The plaintiffs thus assert that the statute in question is purely procedural, relying on the opinion of the Louisiana Supreme Court in *Louisiana Land & Exploration Company*, 110 So.3d 1038. There, the Louisiana Supreme Court stated that the "legislature has not, *in this solely procedural statute*, stripped landowners of any of their substantive rights. The statute repeatedly assures this." *Id.* at 1053 (emphasis added).

The defendants counter by asserting that the Act is indeed applicable to federal courts sitting in diversity. They argue that, as there is no Federal Rule that directly collides with the Act,[53] a federal court must apply the outcome determination test, as well as consider whether the "state rule is 'bound up' with state-secured substantive rights and obligations."[54] Thus, argue the defendants, since the Act is part of a cohesive statutory scheme designed to regulate the

---

[52] Pl.'s Mot. to Strike [Doc. 100], at 5-6.
[53] Wainoco's Opp. [Doc. 106], at 2 (*citing Hanna v. Plumer*, 380 U.S. 460, 472 (1965)).
[54] *Id.* (*citing All Plaintiffs v. All Defendants*, 645 F.3d 329, 335-36 (5th Cir. 2011) (citations omitted)).

remediation of oilfield sites within the state, the Act must be applied by a federal court sitting in diversity in order to discourage forum shopping.[55]

This is not the first time a federal court has been asked to weigh in on the nature of the Act.  The Eastern District of Louisiana has previously found that "[t]he Act is clearly a procedural law."  *Brownell Land Co., L.L.C., v. Oxy U.S.A., Inc.*, 538 F. Supp. 2d 954, 957 (E.D. La. 2007).  As noted by the *Brownell Land* court, the Act clearly states that

> [i]t is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest.  To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation.

*Id.* (*citing* LA. REV. STAT. ANN. § 30:29(A) (2012)).

The defendants, however, citing *Sweet Lake Land & Oil Co., L.L.C., v. Exxon Mobil Corporation*, No. 2:09-cv-01100, 2011 U.S. Dist. LEXIS 98640 (W.D. La. Sept. 1, 2011), urge that the court there found that at least some provisions of the Act are applicable to federal courts sitting in diversity.[56]  Even if the court accepts the defendants' position in this regard, it is of no moment.

Assuming, *arguendo*, that the Act is applicable to a federal court sitting in diversity, the Act's plain language merely asserts that "a defendant *may request* that the court conduct a preliminary hearing."  LA. REV. STAT. ANN. § 30:29(B)(6) (2012) (emphasis added).  "Under Louisiana law, '[t]he fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law.'"  *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013) (*citing S.W.A.T. 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 302 (La. 2001)).

---

[55] *Id.* at 3.  *See also* Beem's Memo. in Supp. of Its Mot. for Preliminary Hearing [Doc. 108], at 2-4.
[56] Wainoco's Opp. [Doc. 106], at 4-5.

Legislation is the solemn expression of the will of the legislature. LA. CIV. CODE. ANN. art. 2; *First Nat. Bank, U.S.A. v. D.D.S. Const., L.L.C.*, 91 So.3d 944, 953 (La. 2012). The determination of the legislature's will must start with the language of the statute itself. *McGlothlin v. Christus St. Patrick Hosp.*, 65 So.3d 1218, 1227 (La. 2011). The words used must be interpreted as they are generally understood. LA. CIV. CODE ANN. art. 11; *McGlothlin*, 65 So.3d at 1228. When the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature's intent. LA. CIV. CODE. ANN. art. 9; LA. REV. STAT. ANN. § 1:4; *In re: Succession of Faget*, 53 So.3d 414, 420 (La. 2010).

*State v. La. Land & Exploration Co.*, 110 So.3d 1038, 1044 (La. 2013).

Applying these interpretative principles, a plain reading of the Act indicates that it merely gives the defendants the option to request a preliminary hearing. The Act does not require that a preliminary hearing be held. Rather, that decision seems to be at the discretion of the court.

The defendants argue that preliminary hearings pursuant to the Act "are designed to ensure that Plaintiffs have a good faith basis for suit against each defendant."[57] However, as the defendants aptly point out, this provision of the Act is largely redundant as the plaintiffs "are also required by the Federal Rules of Civil Procedure to have a good faith basis for suit against each defendant at the time of filing."[58] Further, the defendants, addressing the underlying merits of the suit itself, assert that the plaintiffs have no evidence of any environmental damage.[59] However, the defendants acknowledge that the plaintiffs have at the very least submitted affidavit evidence alleging environmental damage on their property.[60]

There are two possibilities: either the Act is substantive in nature or it is procedural. If it is substantive, then it must be applied by a federal court sitting in diversity. However, in this instance, assuming without deciding that the Act is substantive in nature, it merely permits a

---

[57] Wainoco's Opp. [Doc. 106], at 5 n.1.
[58] *Id.* (discussing FED. R. CIV. PRO. 11).
[59] Wainoco's Opp. [Doc. 106], at 6.
[60] *Id.*

defendant to request a preliminary hearing to determine whether good cause is shown for maintaining suit against it.  As the Act does not guarantee that a preliminary hearing be granted, and as the court finds that good cause has already been shown by the plaintiff, the court is disinclined to grant the defendants' requests for a preliminary hearing.  On the other hand, if the Act is purely procedural in nature, then the Federal Rules of Civil Procedure control and a federal court sitting in diversity need not follow the Act's procedural guidelines.  Accordingly,

**IT IS ORDERED** that the defendants' Motions for Preliminary Hearing [Docs. 61 in case no. 2:12-cv-1253, 100 in case no. 2:12-cv-1253, 65 & 78] be and hereby are **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' Motion to Strike [Doc. 100] is hereby **DENIED AS MOOT**.

### Motion to Stay Proceedings

Lastly, the defendants have moved to stay the proceedings[61] pursuant to Louisiana Revised Statute 30:29(B)(1), which states that,

> [n]otwithstanding any law to the contrary, immediately upon the filing or amendment of any litigation or pleading making a judicial demand arising from or alleging environmental damage, the provisions of this Section shall apply and the party filing same shall provide timely notice to the state of Louisiana through the Department of Natural Resources, commissioner of conservation and the attorney general.  The litigation shall be stayed with respect to any such judicial demand until thirty days after such notice is issued and return receipt is filed with the court.

LA. REV. STAT. ANN. § 30:29(B)(1) (2012).  However, as the plaintiffs have demonstrated by their filing into the record of their Affidavit of Notice Pursuant to La. R.S. 30:29 [Doc. 99] that notice has been given to both the Commissioner of Conservation as well as the Attorney General for the State of Louisiana, this Motion to Stay is without merit.  Accordingly,

---

[61] Wainoco's Memo. in Supp. [Doc. 23-1], at 1-2.

31

**IT IS ORDERED** that the defendants' Motion to Stay [Doc. 65] be and hereby is

**DENIED.**

Lake Charles, Louisiana, this 13 day of _____,2013.


PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE