RECEIVED
IN LAKE CHARLES, LA
OCT 21 2014
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| RUBY MAE SIMON CONSTANCE, ET AL, | CIVIL ACTION NO. 2:12-cv-1252 (LEAD CASE) CONSOLIDATED WITH 2:12-cv-1253 (MEMBER CASE) |
| Plaintiffs, | |
| v. | JUDGE MINALDI |
| AUSTRAL OIL EXPLORATION COMPANY, INC., ET AL, | MAGISTRATE JUDGE KAY |
| Defendants. | |

## MEMORANDUM RULING

Before the court is defendant, Diasu Oil & Gas Company, Inc.'s ("Diasu"), Motion for Summary Judgment [Doc. 118], to which the plaintiffs have filed an Opposition [Doc. 125], and Diasu has filed a Reply [Doc. 128], to which plaintiffs have filed a Sur Reply [Doc. 134]. For the following reasons, Diasu's Motion for Summary Judgment [Doc. 118] as to the wells associated with State Lease 6930 be and hereby is **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs brought suit for contamination to their property which was allegedly caused by the oil and gas production of defendants.[1] Suit was originally filed on April 11, 2012 in the 38th Judicial District Court for Cameron Parish.[2]

The State of Louisiana executed a mineral lease ("State Lease 6930")[3] in favor of Dernick, Land & Company and Marinex Petroleum Company.[4] On January 20, 1977, Dernick and Marinex assigned the mineral lease to Wainoco Oil & Gas Company ("Wainoco"), the

---

[1] Pls.' Pet. [Doc. 1-2].
[2] Pls.'s Pet. [Doc. 1-2].
[3] Ex. A SL 6930 [Doc. 118-2].
[4] Ex. A SL 6930 [Doc. 118-2].

1

predecessor to Diasu, for property in the Gulf of Mexico, West Cameron Block 10.[5] However, the lease did not provide Wainoco with onshore access to the property.[6] As a result, on June 22, 1977, Wainoco entered into a Surface-Subsurface Agreement ("Agreement") with Ira and Cecil Peveto ("Peveto"),[7] owners of property adjacent to the Gulf of Mexico in Section 16 and 17 in Township 15 South, Range 12, Cameron Parish.[8]

The Agreement permitted Wainoco to access the three acre area ("property") in Section 17 for directional drilling into Block 10.[9] The Agreement also granted Wainoco permission to construct and maintain drilling equipment.[10] The duration of the Agreement was contingent on the payment of rent.[11] On two occasions, the Agreement was amended, once in June 1977 and again in August 1977.[12]

On January 27, 1978, Peveto and Wainoco also entered into a Surface Lease and Pipeline Right of Way ("Surface Lease") for the property.[13] The Surface Lease adopted, ratified, and confirmed the Agreement and the amendment to the Agreement.[14] The duration of the Surface Lease was to exist until the wells were plugged and abandoned.[15]

---

[5] Ex. B Partial Assignment of Oil, Gas and Mineral Lease [Doc. 118-3].
[6] Ex. B Partial Assignment of Oil, Gas and Mineral Lease [Doc. 118-3]; Ex. A SL 6930 [Doc. 118-2].
[7] Ex. C Surface-Subsurface Agreement [Doc. 118-4], ¶1.
[8] Ex. C Surface-Subsurface Agreement [Doc. 118-4].
[9] Ex. C Surface-Subsurface Agreement [Doc. 118-4].
[10] "[A]ll such rigs, equipment, tank batteries, pits, disposal wells, separators, heaters, treaters, pumps and all other such machinery, appurtenances and appliances as may be required or desired by lessee in the conduct of its operations hereunder" Ex. C Surface-Subsurface Agreement [Doc. 118-4], ¶ 3.
[11] "[F]ull force and effect for so long as lessee makes the annual rental payments provided above and for so long as Lessee's directionally drilled well continues to produce oil and gas and until such well has been plugged and abandoned" Ex. C Surface-Subsurface Agreement [Doc. 118-4], ¶ 5.
[12] Ex. D-1 Am. of Surface-Subsurface Agreement [Doc. 118-5], ¶1.
[13] Ex. E Surface Lease and Pipeline Rights of Way [Doc. 118-7], at 28.
[14] Ex. E Surface Lease and Pipeline Rights of Way [Doc. 118-7], ¶4.
[15] " . . . [F]or so long as Grantee's wells which have a surface location on any property presently owned by or hereafter acquired by Grantor in Township 15 South, Range 12 West, Cameron Parish, Louisiana, regardless of where said wells are completed, continue to produce oil and/or gas and/or other minerals and/or until said wells have been plugged and abandoned." Ex. E Surface Lease and Pipeline Rights of Way [Doc. 118-7], ¶ 9.

In late 1984, Wainoco assigned the SL 6930 lease to Diasu.[16] Diasu operated five wells ("SL 6930 wells") on the property from 1984 to 1988, in accordance with the SL 6930 lease.[17] Pursuant to the Assignment, Wainoco transferred all rights in the Agreement, the Amendment to the Agreement, and the Surface Lease to Diasu to be effective August 1, 1984.[18]

Both the Agreement and the Surface Lease contained provisions to determine how damages would be evaluated:[19]

> The Considerations recited herein include payment in full to Lessors for all damages sustained by them to said leased premises . . . by reason of the operations of Lessee under the provisions of this lease; however, Lessee agrees that it will, at such time as the well above mentioned has been plugged and abandoned, restore the premises to as near their original conditions as practical.[20]

The Surface Lease contains a similar provision to address damages.[21]

During Diasu's operation of the SL 6930 wells, Diasu asserts that there was no contamination of the property.[22] Diasu maintains that the SL 6930 wells were plugged and abandoned by July 1988, and it removed all equipment and closed the pits.[23] Diasu further alleges that they acted in accordance with applicable state law.[24] There was no further involvement with the wells after July 1988, and no subsequent rent payments were made.[25] Thus, Diasu argues that the Agreement and the Surface Lease expired in 1988 after the payments

---

[16] Ex. F Assignment of Oil and Gas, Leases, Bill of Sale and Indemnity Agreement [Doc. 118-8].
[17] Ex. G-1 Aff. of Gary Chitty [Doc. 118-9], at 1.
[18] Ex. G-2 Aff. of Thomas McMinn [Doc. 118-10], at 1.
[19] Ex. C Surface-Subsurface Agreement [Doc. 118-4], ¶ 8; Ex. E Surface Lease and Pipeline Rights of Way [Doc. 118-7], ¶ 11.
[20] Ex. C Surface-Subsurface Agreement [Doc. 118-4], ¶ 8.
[21] Ex. E Surface Lease and Pipeline Rights of Way [Doc. 118-7], ¶ 11.
[22] Ex. G-2 Aff. of Thomas McMinn [Doc. 118-10], at 1-2.
[23] Ex. G-1 Aff. of Gary Chitty [Doc. 118-9], at 1.
[24] *Id.*; Ex. G-2 Aff. of Thomas McMinn [Doc. 118-10], at 1.
[25] Ex. G-1 Aff. of Gary Chitty [Doc. 118-9], at 2; Ex. G-2 Aff. of Thomas McMinn [Doc. 118-10], at 2.

ceased.[26] Moreover, Diasu contends that the property was restored to its original condition following the termination of their operations.[27]

Diasu states that Peveto made no claim against Diasu, nor any other defendant, for contamination to the property despite having knowledge that oil and gas activity was taking place.[28] Whether the plaintiffs or their ancestors-in-title had knowledge of the contamination is a point of contention between both sides.[29] The plaintiffs maintain that they had no knowledge of oil production and that neither they, nor their ancestors-in-title, observed any changes to the property which would give them suspicion that contamination was occurring on the property.[30] The plaintiffs contend that they only received knowledge of possible contamination after they consulted with an attorney who informed them of the possibility of contamination.[31] This consultation with counsel took place "less than one year prior to filing the lawsuit."[32]

The property in question was originally owned by Olizeam and Sarah Jane Peveto.[33] Then Sarah Jane Peveto died, leaving her interest to Olizeam Peveto, Dennis K. Peveto, Ira B. Peveto, and Ray Peveto.[34] On March 6, 1940, Dennis K. Peveto, Ira B. Peveto, and Ray Peveto inherited the interest of Olizeam Peveto.[35] Following the death of Ray Peveto, a Judgment of Possession was issued on November 5, 1965, transferring the property to the surviving spouse of Ray Peveto, Olive Peveto, as well as to Lois Murphy, Olizeam E. Pevoto, Jewell Gilcrease, Cecil

---

[26] Def.'s Statement of Uncontested Facts [Doc. 118-15], at 5.
[27] Ex. G-1 Aff. of Gary Chitty [Doc. 118-9], at 1-2; Ex. G-2 Aff. of Thomas McMinn [Doc. 118-10], at 1-2.
[28] Ex. G-1 Aff. of Gary Chitty [Doc. 118-9] at 1; Def.'s Statement of Uncontested Facts [Doc. 118-15], at 4.
[29] Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. 118-1], at 18-19; Def.'s Resp. to Pls.' Opp'n to Def.'s Mot. for Summ. J. [Doc. 128], at 4-5; Pls.' Ex. G Aff. of Georgia A. Constance [Doc. 125-10], at 2-3; and Pls.' Reply to Def.'s Resp. to Pls.' Opp'n to Def.'s Mot. for Summ. J. [Doc. 134], at 6-7.
[30] Pls.' Ex. J Aff. of Gene Allen Constance [Doc. 125-13], at 2-3; Pls.' Reply to Def.'s Resp. to Pls.' Opp'n to Def.'s Mot. for Summ. J. [Doc. 134], at 6-7.
[31] Pls.' Ex. G Aff. of Georgia A. Constance [Doc. 125-10], at 2-3.
[32] *Id.* at 3.
[33] Ex. L Pls.' Statement of Material Facts Not in Dispute [Doc. 125-15], at 1.
[34] *Id.*
[35] *Id.*

Peveto, Ovia Peveto, Kenneth Pevoto, and Janie Marie Reeves.[36] On August 3, 1992, the property in question was transferred by donation from Olive Peveto to Bobby Lynn Koonce.[37] The act of donation contained nonspecific language stating that donor had "given, granted, donated, set over and delivered unto the donee . . . all her rights, title and interest in and to [property] . . . with full subrogation in and to all the rights and actions in warranty of the said donor against all former owners and vendors . . . ."[38] Thereafter, Koonce sold his interest to Gene and Georgia Constance on November 7, 1992.[39] On November 11, 2013, Koonce executed an Act of Correction purporting to transfer his personal rights to the Constances, including the personal right to bring suit for damage occurring prior to plaintiff's ownership of the property.[40]

Ira Peveto, Lois Murphy, and Jewell Gilcrease sold their interests to the Constances by warranty deeds in 1994.[41] Gene Constance later died and his property was transferred to his surviving spouse, Georgia Constance, as well as to Roxanne Stelly, Benji Duhon, and Jackson Joseph Constance.[42] On July 12, 2011, Georgia Constance transferred her interest to the Georgia Constance Revocable Living Trust.[43]

---

[36] Pls' Ex. B Judgment of Possession of Ray Peveto [Doc. 125-2]. "Mrs. Olive M. Peveto, as surviving widow, and as a legatee under the last will and testament of Ray B. Peveto, and of Mrs. Lois Murphy, Olizeam E. Peveto, Mrs. Jewell Gilcrease, Cecil N. Peveto, Ovia B. Peveto, Kenneth R. Peveto, Sr., and Mrs. Janie Marie Reeves, as the sole surviving heirs at law of decedent, and as legatees under the last will and testament of decedent, Ray B. Peveto, to be placed and sent into possession of the property, rights and credits belonging to decedent on the date of his death." *Id.*
[37] Pls.' Ex. C Act of Donation from Olive Peveto to Bobby Koonce [Doc. 125-3].
[38] Pls.' Ex. C Act of Donation from Olive Peveto to Bobby Koonce [Doc. 125-3], at 2.
[39] Ex. I Bill of Sale from Koonce to the Constances [Doc. 118-12].
[40] Pls.' Ex. D Act of Correction of Cash Deed [Doc. 125-4], at 2. "[A]ll of Seller's rights, interests, claims and causes of action of any kind of character, pertaining to the Property or any portion thereof, whether real or personal in nature, whether known or unknown to Seller and whether than existing or arising in the future, including without limitation, any rights to enforce specific performance of any obligations or to seek damages for any damage or injury to, or defect in, the Property, including, but not limited to claims arising out of the past environmental damage or contamination of the surface and subsurface of the Property, including contamination of the groundwater." *Id.*
[41] Ex. J Bill of Sale from Ira Peveto to the Constances [Doc. 118-13], at 1; Ex. J Bill of Sale from Lois Murphy to the Constances [Doc. 118-13], at 4; Ex. J Bill of Sale from Jewell Gilcrease to the Constances [Doc. 118-13], at 7.
[42] Pls.' Ex. A Title History [Doc. 125-1], at 2.
[43] *Id.*

On February 10, 2014, Cecil Peveto sold his interest, explicitly including his personal rights, to the Constances by warranty deed.[44] Cecil Peveto thereby transferred whatever personal rights he had in the property to the Constances.[45]

The plaintiffs originally filed suit in the 38th Judicial District Court in Cameron Parish, Louisiana, on April 11, 2012, alleging that oil and gas exploration and production activities undertaken by the defendant oil companies caused contamination and damage to land "own[ed] and/or use[d]" by the plaintiffs.[46] In their petition, the plaintiffs described the property at issue as follows:

> 1) Lots 4, 5, 28, and 29 of Block A Gulf Terrace on the beach, a subdivision of portion of Section 9, Township 15 South, Range 12 West; Fractional Section 9, Township 15 South, Range 12;
> 2) The West Half of the Southwest Quarter (W/2 of SW/4) of Section 1; the South Half (S/2) of Section 2; the East Half of the Southeast Quarter (E/2 of SE/4), the Southeast Quarter of the Northeast Quarter (SE/4 of NE/4) of Section 3, Fraction East Half of the Northeast Quarter (E/2 of NE/4) of Section 10; all of Fractional Section 11; Fractional West Half of the Northwest Quarter (W/2 of NW/4) of Section 12, Township 15 South, Range 11 West;
> 3) The East Half of the Southwest Quarter of the Northeast Quarter (E/2 of the SW/4 of the NE/4) and the East Half of the Southeast Quarter (E/2 of the SE/4) of Section 7, Township 15 South, Range 14 West; and
> 4) The North Half (N/2) of Section 1, Township 15 South, Range 11 West.[47]

---

[44] Pls.' Ex. E Cash Warranty Deed from Cecil Peveto to the Constances [Doc. 125-5].
[45] Pls.' Ex. E Cash Warranty Deed between Cecil Peveto to the Constances [Doc. 125-5], at 2-3. "[V]endee does hereby GRANT, SELL, BARGAIN, ASSIGN, CONVEY, and DELIVER to Vendor a one hundred percent (100%) interest in and to the following: (a) Vendee's personal and real rights to claims property damage to the property described above; (b) any and all rights, real or personal, to claim property or remediation damages from anyone, including but not limited to, all former or current mineral or surface lessees, assignees, sub-lessees or owners of use servitudes on the property, and any and all oil and gas operators, drillers, working interest owners or service companies; (c) *any and all rights, real or personal, to make claims for environmental contamination or pollution against anyone arising out of or associated with any oil and gas operations or any other operations that have occurred on the Property, whether before, during or after Vendee's ownership of said Property*, and (d) any and all rights to assert claims for property damages arising from the breach of any mineral or surface leases or use servitude agreements affecting the Property." *Id.* (emphasis added). "It is the intent of Vendor to convey herein any and all property rights, mineral rights, and personal rights in all property he owns in Cameron Parish, Louisiana." Pls.' Ex. E Cash Warranty Deed between Cecil Peveto to the Constances [Doc. 125-5], at 3.
[46] Pet. [Doc. 1-2], at ¶ 2.
[47] *Id.*

The petition also identified two dozen oil and gas wells allegedly operated on the subject property by serial numbers used by the Louisiana Department of Natural Resources.

The lead case was removed by Williams Exploration Company ("Williams"), ExxonMobil Oil Corporation ("Exxon"), and Diasu, on May 16, 2012, on the basis of diversity jurisdiction. The member case, 2:12-cv-1253, was also filed in the 38th Judicial District Court, and originally included only six plaintiffs, all of whom were also originally listed as plaintiffs in the lead case. The property at issue in the member case petition was described as

1) The North Half (N/2) of Section 1, Township 15 South, Range 11 West;
2) The South Half (S/2) of Section 36, Township 14 South, Range 11 West;
3) The North Half of the South Half (N/2 of S/2) and the South Half of the North Half (S/2 of N/2) of Section 14, Township 15 South, Range 15 West;
4) The North Half of the South Half (N/2 of S/2) and the South Half of the North Half (S/2 of N/2) of Section 15, Township 15 South, Range 15 West;
5) Irregular Sections 15, 16, 17, 18, 19, Township 15 South, Range 12 West;
6) The West Half of the Southwest Quarter (W/2 of SW/4) of Section 1; the South Half (S/2) of Section 2; the East Half of the Southeast Quarter (E/2 of SE/4), the Southeast Quarter of the Northeast Quarter (SE/4 of NE/4) of Section 3, Fraction East Half of the Northeast Quarter (E/2 of NE/4) of Section 10; all of Fractional Section 11; Fractional West Half of the Northwest Quarter (W/2 of NW/4) of Section 12, Township 15 South, Range 11 West; and
7) Lots 4, 5, 28, and 29 of Block A Gulf Terrace on the beach, a subdivision of portion of Section 9, Township 15 South, Range 12 West; Fractional Section 9, Township 15 South, Range 12.[48]

The petition in the member case also identified thirty-one oil and gas wells by serial numbers that were allegedly operated by the defendants. The member case was removed on May 16, 2012.[49]

Shortly thereafter, Wainoco filed its Motion seeking dismissal for failure to state a claim, as well as requesting a more definite statement, in both the lead and member

---

[48] Pet. [Doc. 1-2 in case no. 2:12-cv-1253], at ¶ 2.
[49] Not. of Removal [Doc. 1 in case no 2:12-cv-1253].

cases.[50] Smith and Duncan filed similar motions in the member case.[51] Beem also filed a similar motion in the lead case.[52]

Responding to these motions, the plaintiffs filed their First Supplemental and Amended Petition for Damages [Doc. 59] in the lead case. In it, the plaintiffs amended the lead case petition to include the property descriptions set forth in the petition in the member case. The plaintiffs also added additional well serial numbers.

Williams and Diasu filed a Motion to Consolidate [Doc. 109 in case no. 2:12-cv-1253] with the court. The lead and member cases were consolidated pursuant to Federal Rule of Civil Procedure 42(a)(2) by this court's Consolidation Order [Doc. 80], signed August 3, 2013. Wainoco thereafter filed a Partial Motion to Dismiss for Failure to State a Claim [Doc. 65] on behalf of itself and the other defendants,[53] which was granted in part and denied in part in a Memorandum Ruling [Doc. 110] from this court.

In response to Wainoco' motion, plaintiffs' fraud claims, claims under the continuing tort doctrine, continuing trespass claims, claims under Louisiana Civil Code article 2688, and unjust enrichment claims were dismissed in the Memorandum Ruling [Doc. 110].[54] The court also found that the action in this case had prescribed on the face of the pleadings; however, the motion to dismiss on the basis of prescription was denied until there was further discovery to determine whether the doctrine of *contra non valentem* applied so as to suspend prescription.[55]

---

[50] Wainoco's Mot. [Doc. 26 in case no. 2:12-cv-1253]; Wainoco's Mot. [Doc. 23].
[51] Smith's Mot. [Doc. 61 in case no. 2:12-cv-1253]; Duncan's Mot. [Doc. 100 in case no. 2:12-cv-1253].
[52] Beem's Mot. [Doc. 51].
[53] Wainoco's Mot. [Doc. 26 in case no. 2:12-cv-1253]; Wainoco's Mot. [Doc. 23].
[54] Mem. Ruling [Doc. 110], at 10-17.
[55] *Id.* at 23-25.

On January 24, 2014, Diasu filed its Motion for Summary Judgment [Doc. 118] arguing that plaintiffs had no right of action, and alternatively, even if plaintiffs had acquired a right of action, then that action had prescribed. Plaintiffs filed a Memorandum in Opposition to Diasu's Motion for Summary Judgment [Doc. 125] and claimed that plaintiffs had acquired a right of action because the subsequent purchaser doctrine was inapplicable to donations, and further, that the action had not prescribed under the third and fourth categories of the doctrine of *contra non valentem*. In response, Diasu filed a Reply to the Opposition to the Motion for Summary Judgment [Doc. 128], asserting again that the subsequent purchaser doctrine applied to the donation from Olive Peveto to Bobby Lynn Koonce, that the 2013 Act of Correction was insufficient to transfer personal rights, and that the releases in the Agreement and the Surface Lease barred any right of action. Diasu also argued again that any rights of action had prescribed. Finally, plaintiffs filed a Sur Reply [Doc. 134] to Diasu's Reply, reurging their claims and asserting that Diasu bore the burden of proof on the issue of prescription. Because the issue of prescription is dispositive, the court declines to consider the other grounds in Diasu's Motion for Summary Judgment [Doc. 118] at this time.

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A dispute is said to be "genuine" only where "a reasonably jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). In ruling upon a motion for summary judgment, the

district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Personal actions, such as actions for breach of contract, have a prescriptive period of ten years. LA. CIV. CODE ANN. art. 3499 (1983). Actions sounding in tort are subject to a liberative prescriptive period of one year, the period commencing to run from the day the damage is sustained. LA. CIV. CODE ANN. art. 3492 (1992). However, there are exceptions to these prescriptive periods, including the doctrine of *contra non valentem*.

The doctrine of *contra non valentem* suspends the running of prescription where: (1) there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) the cause of action is not known nor reasonably knowable by the plaintiff, even

though his ignorance is not induced by the defendant. *Wells v. Zadeck*, 89 So.3d 1145, 1150 (La. 2012) (citation omitted). Under the fourth category of *contra non valentem* and in the context of claims for damage to property, "knowledge sufficient to start the running of prescription 'is the acquisition of sufficient information, which if pursued, will lead to the true condition of things.'" *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 246 (La. 2010) (quoting *Young v. Int'l Paper Co.*, 155 So. 231, 232 (La. 1934)).

While the party seeking a dismissal based on prescription generally bears the burden of proving prescription at trial, that burden shifts to the plaintiffs to show that the action has not prescribed if prescription is "evident on the face of the pleadings." *Id.* at 1149 (citing *Campo v. Correa*, 828 So.2d 502, 508 (La. 2002) (additional citation omitted)). Where there is an absence of evidence, "the objection of prescription must be decided upon the facts alleged in the petition, and all allegations contained therein accepted as true." *Id.* at 1150. In *Wells*, the Louisiana Supreme Court stated the plaintiffs' claims appeared prescribed on their face where the defendant's operations on plaintiff's property had ceased in 1994, and suit was not filed until 2009. *Id.* Thus, the burden shifted to Wells, the plaintiff in that case, to prove that prescription had been suspended. *Id.*

As discussed in this court's previous Memorandum Ruling [Doc. 110], the action has prescribed on its face as to Diasu because there is no dispute that Diasu ceased its oil and gas production operation on the property in 1988.[56] Therefore, the burden shifted to the plaintiffs to show that the action had not prescribed. Plaintiffs attached a number of affidavits to their Memorandum in Opposition to Diasu's Motion for Summary Judgment [Doc. 125]. There are affidavits from Georgia A. Constance, Roaxanne Marie Constance Stelly, Benji Marie Constance Duhon, Gene Allen Constance, and Jackson Joseph Constance, each stating that there were no

---

[56] Ex. L Pls.' Statement of Material Facts Not in Dispute [Doc. 125-15].

11

outward signs of contamination on the property and that at no time prior to one year before filing the lawsuit did the Affiant know or have any suspicion to investigate whether the property was contaminated.[57]

As to the fourth category under *contra non valentem*, in which the cause of action is not known nor reasonably knowable to the plaintiff, plaintiffs have offered no evidence on Olive M. Peveto's lack of knowledge, on Bobby Lynn Koonce's lack of knowledge, or on Cecil N. Peveto's lack of knowledge. It is unknown whether these purported ancestors-in-title had knowledge sufficient to start the running of prescription or not. Plaintiffs, in fact, go so far as to state that "[t]he record is completely devoid of any evidence as to what Cecil N. Pevoto knew or when he knew it."[58] On the other hand, Diasu's contention that the very act of entering a contract for oil exploration and taking preventative measures in such a contract is sufficient to put an individual on notice of a possible cause of action for contamination is likewise insufficient to provide factual support in the absence of any evidence.[59] However, plaintiffs have the burden of proof on this issue. Lacking evidence that any of their purported ancestors-in-title were without the requisite knowledge to prevent the running of prescription, plaintiffs have failed to satisfy their burden of proof on the issue of prescription. Because plaintiffs did not produce so much as a "scintilla of evidence" on the issue of the knowledge of their ancestors-in-title, there is no genuine dispute as to a material fact raised by plaintiffs' contention that the fourth category of *contra non valentem* applies in this matter.

Regarding the third category under *contra non valentem*—in which the defendant has done something to prevent the plaintiff from availing himself of the cause of action—there is

---

[57] Ex. G Aff. of Georgia A Constance [Doc. 125-10]; Ex. H Aff. of Roxanne Marie Constance Stelly [Doc. 125-11]; Ex. J Aff. of Gene Allen Constance [Doc. 125-13]; Ex. K Aff. of Jackson Joseph Constance [Doc. 125-14]; and Ex. I Aff. of Benji Constance Duhon [Doc. 125-12].
[58] Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. 134], at 12.
[59] Def.'s Resp. to Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. [Doc. 128], at 4.

likewise an absence of evidence. This third category "has been applied to cases wherein defendant has concealed the fact of the offense or has committed acts ('including concealment, fraud, misrepresentation, or other ill practices') which tend to hinder, impede, or prevent the plaintiff from asserting his cause of action . . . ." *Marin*, 48 So.3d at 251-52 (quoting *Nathan v. Carter*, 372 So.2d 560, 562 (La. 1979)). To invoke the doctrine, plaintiffs must show that (1) defendant engaged in conduct which rose to the level of concealment, misrepresentation, fraud, or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction. *Id.* at 252 (internal citations omitted).

In *Marin*, plaintiffs alleged the doctrine of *contra non valentem* applied to prevent the running of prescription where the defendant represented that remediation of the land where oil exploration activities occurred was successful. *Id.* Plaintiffs also asserted that the defendant conducted assessments of the land for internal purposes and failed to inform the plaintiffs of contamination beyond allowable standards. *Id.* The Louisiana Supreme Court found that the conduct was "less than acceptable" but declined to hold that the third category of *contra non valentem* applied. *Marin*, 48 So.3d at 252-53.

In the present case, plaintiffs have offered no factual evidence of any concealment, misrepresentation, fraud, or ill practice on the part of Diasu, instead making a legal argument that Diasu had a duty to speak and that Diasu's failure to speak implicated the third category of *contra non valentem*. There has been no evidence produced to show that Diasu had any knowledge of the alleged land contamination. There is also no evidence of any action by Diasu that effactually prevented the plaintiffs from pursuing a cause of action. There is less evidence of wrongdoing in this case than in *Marin*; plaintiffs have again failed to satisfy their burden of

proof. Because plaintiffs have failed to produce any evidence of wrongdoing on the part of Diasu, the bare assertion that the third category of *contra non valentem* applies is insufficient to raise a genuine dispute as to a material fact.

Plaintiffs have failed to satisfy their burden of showing that prescription has not run in this case. Accordingly,

**IT IS ORDERED** that defendant's Motion for Summary Judgment [Doc. 118] on the basis of prescription as to the wells associated with State Lease 6930 be and hereby is **GRANTED** at this time.

Lake Charles, Louisiana, this 2 day of October, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE